Eloísa Annoni et al., Plaintiffs and Appellants, *v.* Heirs of Blas Nadal y Cuebas et al., Defendants and Appellees.

No. 8287.   Argued December 4, 1941.—Decided December 23, 1941.

*José Sabater* for appellants. *Frank Martínez* for the appellee heirs of Juan Bianchi Rosafa and Guillermo Cabrera. *Oscar Souffront,* for appellee.

Mr. Justice Todd, Jr., delivered the opinion of the court.

In a former appeal in this same case, *Annoni v. Nadal,* 50 P.R.R. 498, this court affirmed the judgment rendered by the lower court presided by a judge on commission appointed by the Governor of Puerto Rico on account of the regular judge having declined to sit in the case. The Circuit Court of Appeals for the First Circuit reversed the judgment of this court (*Annoni v. Blas Nadal's Heirs,* 94 F. (2d) 513) on the following ground:

"We think the Supreme Court erred in holding that Tomás Torres Pérez was a judge de facto, and the case should be sent back to the District Court with instructions to the regular judge of that court to act in accordance with section 84 of the Code of Civil Procedure."

So that the Circuit Court never went into the merits of the case nor did it alter the conclusions thereon reached by this court. The lower court in its decision sustained the demurrers filed by the defendants for insufficiency and of prescription and dismissed the complaint and this court affirmed the above judgment.

After the case had been remanded to the lower court in accordance with the judgment of the Circuit Court, and after it had been tried anew before the then regular judge, said court again sustained the same demurrers already mentioned. The present appeal has been taken from the judgment dismissing the complaint, which was rendered on motion of the plaintiffs themselves who alleged that their complaint could not be amended.

The legal questions involved herein are the same as those raised and determined in the former appeal and from a careful examination and consideration of the allegations of the complaint and the briefs of the parties we come

to the conclusion that the facts of the case and the grounds set forth by this court, through Mr. Justice Wolf, in support of an affirmance of the former judgment, must be ratified. Such facts and grounds are as follows:

"The complaint in this case was filed on the 25th of February, 1931. It sought the nullity of a certain judicial proceeding initiated by Salvador Nadal before the superseded (*extinguida*) court of first instance of Mayagüez against Nadal & Co., as liquidator of the firm of Nadal & Cuebas. One of the grounds was that the action was null and void under the then existing law. Another was that the proceeding was null and void because it was the result of a conspiracy between said Salvador Nadal and his said cousin, Blas Nadal, to defraud Ernesto Patxot y Blanch of his share in the property in the plantation (*hacienda*) Altagracia; that the complainants are the heirs of said Ernesto Patxot, and the owners of a share of said land and have a right to hold it in common with the defendants Juan Bianchi and Guillermo Cabrera. . . .

"    *    *    *    *    *    *    *    *

"Demurrers were filed stating a lack of a cause of action, undue joinder of causes of action, undue joining of defendants, and prescription. From our reading of the opinion, prescription was the principal matter relied upon to sustain the demurrer but we shall, as did the appellees to a certain extent, discuss the sufficiency of the complaint. The prescription was supposed to appear on the face of the complaint.

"The grounds of nullity alleged were:

" '(*a*) That Salvador Nadal and Blas Nadal had connived to deprive Ernesto Patxot of certain rights which by reason of a private contract, subsequently made into a public instrument, he had in the Hacienda Altagracia; (*b*) that Salvador Nadal concealed from the court the true state of the facts and that Ernesto Patxot was not notified; (*c*) that the mortgage credit which Salvador Nadal foreclosed was not liquidated, was subject to novations, had been cancelled by confusion of rights and that the Hacienda Altagracia was not subject to such credit, and (*d*) that, as a consequence of the afore-alleged facts, the court was without jurisdiction in the matter.'

"Now it happens, and there is no question of it, that Salvador Nadal bought or acquired an existing mortgage credit against the plantation Altagracia and in time executed or attempted to execute it. The debtor, as recorded in the registry, was solely and exclusively

the firm of Nadal & Co. Hence, necessarily under the Mortgage Law and its Regulations the creditor would have to proceed against that firm.

"It appears, according to the complaint, that Patxot had acquired an interest in Altagracia, but that such interest was never recorded. The failure to record was not caused by Salvador Nadal nor yet by Blas Nadal. Salvador Nadal, if his mortgage was due, had a right to execute it. He was not, no matter what he knew, bound by the agreements between Blas Nadal and Patxot. The complaint shows that Patxot became insane and that a tutrix was appointed for him. An executing creditor need only pay attention to the debtor as he appears in the registry. *Torres* v. *Lothrop, Luce & Co. et al.*, 16 P.R.R. 172, 231 U.S. 171.

"              *          *·          *          *          *          *          *

"The averments of the complaint that the mortgage was not liquidated, was subject to novations, and that a confusion of rights arose are not ultimate statements of facts. They are conclusions of law to be determined by a court. Whether the debt was due or not would depend upon the facts and so would the matter of novation or confusion of rights. One of the appellees suggests that this suit is a collateral attack and we hold this to be true. Patxot was not the debtor to whom Section 176 of the Mortgage Regulations applies. He failed to record his rights and Salvador Nadal and the purchasers from him were protected under Sections 33 and 34 of the Mortgage Law. These considerations are especially true of the present alleged owners of the property, namely, Bianchi and Cabrera.

"The appellees discuss prescription and cite certain cases. As Salvador Nadal acquired the property in 1903 and Cabrera and Bianchi in 1907 without any defect appearing from the registry, not only did ordinary, but extraordinary prescription run, if the title of Salvador Nadal may be tacked on to the title acquired by Bianchi and Cabrera as we think it can. We can not agree with the appellants that the title of Salvador Nadal was absolutely inexistent.

"This would be flying in the teeth of the cited jurisprudence."

Dwelling further upon the above considerations we can say the plaintiffs seek to establish their title to the properties the subject of the revendicatory action, on a private instrument, which was embodied in a public deed dated Au-

gust 30, 1895, by virtue of which Ernesto Patxot Blanch, predecessor in interest of the plaintiffs, acquired from Blas Nadal one-half interest in the Altagracia plantation. However, the complaint fails to allege that said instrument was recorded or mentioned in any way in the registry of property. It is evident, therefore, that as Salvador Nadal, the predecessor in interest of the defendant heirs, was not a party to such instrument, there was nothing to bar him to enforce, as he did, his mortgage credit already due against the Altagracia plantation without making Ernesto Patxot Blanch a party thereto, who held no interest in said plantation recorded in the registry of property. Section 128 *et seq.* of the Mortgage Law and Article 168 *et seq.* of the Regulations..

The Heirs of Bianchi and Cabrera, codefendants herein, have a stronger case because, as they purchased the Altagracia plantation from the person who appeared of record entitled to sell the same, and as the grounds for nullity alleged by the plaintiffs did not clearly appear of record either, they must be held to be third persons under section 34 of the Mortgage Law. See, among others, the cases of *People* v. *Riera,* 27 P.R.R. 1; *Ayllón et al.* v. *González et al.,* 28 P.R.R. 61; and the dissenting opinion of Mr. Justice Texidor of this court in *Pérez* v. *Díaz,* 41 P.R.R. 352, which prevailed upon the reversal of said case by the Circuit Court of Appeals in *Díaz et al.* v. *Pérez et al.,* 54 F. (2d) 588. That distinguished magistrate partly expressed himself as follows:

"Section 34 above quoted is one of the sections of said law most discussed and commented. It is evident that the circumstance that an act or an apparent contract is recorded, in violation of the law, can not make such an act or contract prevail as valid and perfect. But as the Mortgage Law is a law of security as regards third persons, and as for the recording of acts and contracts there are required certain strict requisites and the examination and qualification of documents by a registrar, who is an attorney and has power to deny the recording of void acts and contracts, value and effect

must be given to a record already made, if it does not show on its face any defect avoiding the act or contract. If it does show it, the subsequent purchaser or grantee acquiring rights over the property so recorded, will have acquired something with knowledge of the existence of a cause of annulment, of which he had notice from the registry itself; whereas if the defect does not appear from the entry, such purchaser is thereby protected.

". . . Section 34 does not simply speak of causes which do not appear from the registry but of causes which do not *clearly* appear therefrom. (Italics ours.) So an examination by an attorney specialized in Mortgage Law is not contemplated; but only that any person of average education may see whether or not the cause of nullity appears from the registry. The interpretation given by the jurisprudence is in accord with this theory. (Citations.)

" " *     *     *     *     *     *     *

"Following such doctrine and such reasoning it would be necessary that we should have seen that the causes of nullity resulted affirmatively and clearly from the registry itself, in order to decide the affirmance of the judgment appealed from, thereby declaring that successive purchasers of the property had legal notice of the existence of certain defects or causes of nullity. And in our opinion such causes do not appear affirmatively and clearly. And it was on the basis of an entry in the registry wherefrom the causes of nullity do not appear affirmatively and clearly, that the subsequent purchases were made and the property was possessed for a great number of years by successive purchasers, in good faith, without the alleged co-owners of the property making any claim against the possessors.

"The Supreme Court of Spain in its judgment rendered November 25, 1890, in the case of Ramón Valdés against the Municipality of Oviedo, Vol. 68, Civil Jurisprudence, pages 426 to 432, decided that:

" ' . . . The legal principle regarding the fact that what is void *ab initio* can not be made good by the lapse of time, is not unlimited or absolute, and should be understood applicable only, as the Supreme Court has declared, when the law, given certain circumstances, does not recognize or create a right to be respected.' "

The above doctrine is applicable to the case at bar. The complaint fails to allege that the supposed grounds for

nullity in the title of codefendants Bianchi and Cabrera clearly appear of record. Patxot never recorded his alleged purchase of one-half interest in the Altagracia plantation. Salvador Nadal foreclosed his mortgage credit and the above plantation was awarded to him on December 26, 1899, and he sold the same to Bianchi and Cabrera on April 10, 1907. The complaint was filed on February 25, 1931. It is plain that the action has prescribed (Section 1863 of the Civil Code).

██ ██ The fact that it was alleged in the complaint that a similar action was brought in 1912—which was not determined on its merits as a judgment was entered upon the action being abandoned—did not interrupt the prescription in the present case, firstly, because according to the complaint in the record it appears that codefendants Bianchi and Cabrera were not made parties defendant in the former action, and, therefore, it could not affect their rights at all; and, secondly, because it is provided in Section 1843 of the Civil Code that possession is interrupted for the purpose of prescription, either naturally or civilly, and in regard to the latter, section 1845 provides that civil interruption is caused by a judicial citation of the possessor, even should it be by order of a court or of a judge without jurisdiction. Also, section 1846 provides as follows:

"Section 1846.—The judicial citation shall be considered as not made and shall not cause interruption:
"1.—*    *    *    *    *    *    *
"2.—If the plaintiff should withdraw his complaint or should permit the proceedings to lapse.
"3.—If the suit against the possessor should be dismissed."

In applying the above provisions in *Calderón v. Sociedad Auxilio Mutuo*, 42 P.R.R. 400, 405, 406, this court said:

"As shown by the second and third subdivisions of section 1847, the civil interruption referred to in section 1846, is contingent upon prosecution of the action by plaintiff to a successful conclusion. 12 Manresa 802, 804. An unsuccessful action, which does not result

in any change of possession, does not arrest the running of the statute. The result is the same whether the action be voluntarily discontinued by plaintiff or *dismissed for want of prosecution.* 2 C. J. 109, sec. 166.'' (Italics ours.)

The quotation in said case from Manresa reads in part as follows:

''. . . The effects of the lapse of the proceedings are similar to those stated by us when treating of the discontinuance of actions, and, for a like legal reason, the effects in both cases must also be similar.

''In order to avoid possible doubts in construing the above provision, it is well to state that on no account the lapse of the proceedings should be mistaken for the prescription of the action prosecuted, as the consequences in either case are very different. The lapse of the proceedings is not the prescription of the action, as shown by the fact that after the first proceedings have elapsed the action may be prosecuted again by filing a new complaint in which the same cause of action previously prosecuted may be alleged, *provided that by that time the* same has not already prescribed . . .''

And that is what the plaintiffs sought to accomplish by filing this new complaint and prosecuting the same action as in 1912. However, when they did so in 1931, the said action had already prescribed.

The judgment appealed from is affirmed.

Mr. Chief Justice Del Toro took no part in the decision of this case.